# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Ryan Uehling<br><br>Millennium Laboratories, Inc.,<br>                Plaintiff,<br>Allied World Assurance Company (U.S.) Inc.,<br>                Defendants.<br><br>*Pending in the United States District Court for the Southern District of California as Case No. 3: 12-cv-2280-H-KSC* | Case No. 1: 14-mc-00009-LJO-BAM<br><br>**ORDER DENYING ALLIED WORLD ASSURANCE COMPANY (U.S.) INC.'S MOTION TO COMPEL** |

## I.     INTRODUCTION

Currently before the Court is Allied World Assurance Company (U.S.) Inc.'s ("Allied World") Motion to Compel Ryan Uehling to Answer Deposition Questions and Produce Documents. (Doc. 13.) The parties filed their Joint Discovery Statement on March 28, 2014. (Doc. 29.) A hearing was held on April 4, 2014. (Doc. 33.) Counsel Robert Wiygul and Phillip Wilson appeared telephonically for Allied World. Counsel Stephanie Borchers and Donald Fishbach appeared in person for Ryan Uehling. Counsel Vincent Herron appeared telephonically for Millennium Laboratories, Inc. ("Millennium"). Having considered the parties' Joint Discovery Statement, arguments presented at the April 4, 2014 hearing, and the entire record in this case, the Court issues the following Order.

**ORDER**

# I.   BACKGROUND

**A.   The Underlying Coverage Action**

Allied World's motion arises out of an insurance coverage action, *Millennium Laboratories, Inc. v. Allied World Assurance Company (U.S.) Inc*., No. 12-2280-H-KSC (the "Coverage Action"), which is proceeding in the United States District Court for the Southern District of California.  The Coverage Action involves a dispute regarding a Forcefield Healthcare Organizations Directors and Officers Liability Policy (the "Policy") issued by Allied World to Millennium for the policy period December 1, 2011, to December 1, 2012.  In the Coverage Action, Millennium seeks payment of costs it has incurred in responding to an investigation by the United States Department of Justice (the "DOJ Investigation").

Ryan Uehling is not a party to the Coverage Action.  However, Allied World and Millennium suspect Uehling, a former employee of Millennium, is a relator in a *qui tam* action against Millennium, currently under seal somewhere in the United States.  Allied World believes Uehling possesses information concerning the timing, nature, and existence of the DOJ's Investigation, which in turn would bear upon the Coverage Action.

To defend against Millennium's claim that the DOJ Investigation is covered by the Policy, Allied World has sought discovery from Uehling regarding, among other things, (1) the scope and nature of the DOJ Investigation and (2) the scope and nature of certain qui tam and private actions pre-dating the inception of the Policy (the "Prior Actions") that Allied World contends are closely related to the DOJ Investigation. Allied World argues this information is necessary to determine the applicability of certain exclusions from the Policy or whether the investigation falls within the policy period. The scope and nature of the DOJ Investigation are also relevant to determining what limit of liability would apply if the DOJ Investigation is in fact covered.

**B.   The Discovery Requests at Issue**

Allied World served document and deposition subpoenas on Uehling in the Coverage Action and deposed him on January 20, 2014 in this District. On February 14, 2014, Allied

World commenced the present action by filing a motion to compel Uehling to answer deposition questions he had refused to answer on January 20, 2014, and to produce documents responsive to Allied World's document subpoena. The parties met and conferred and narrowed the issues for this Motion. The deposition questions at issue, and Uehling's responses, are as follows:

> **1. Information Concerning Uehling's Involvement in Litigation Against Millennium**

Allied World's question: "Are you currently involved or have you in the past been involved in any action filed against Millennium?"

Uehling's response/objection: Attorney client/privilege and "statutory privilege."
(Uehling Dep. 59:20-22; 60:25-61:4, January 20, 2013, Wiygul Decl., Ex. 1.)

> **2. Allied World's Request For a Hard Drive Containing Information Uehling Provided to the Department of Justice**

Allied World also served a document subpoena for on Uehing requesting "all documents that [Uehling or any agent or representative of Uehling] provided to the DOJ . . . related to any . . . investigation or potential investigation" of Millennium and "all communications and/or correspondence between the DOJ . . . and [Uehling or any agent or representative of Uehling] related to any such investigation or potential investigation." See Wiygul Decl., Ex. 2. Specifically, Allied World moves to compel Uehling to produce a copy of a hard drive that contains documents provided to the DOJ on Uehling's behalf in the course of the DOJ's investigation of Millennium.

Uehling opposes Allied World's request on the grounds that the reviewing and producing the requested documents would be unduly burdensome and expensive. Uehling also argues producing such information could potentially violate his statutory obligations, assuming he was bound by any.

Millennium does not oppose the request; however, Millennium requests that it be allowed to review any such documents before they are provided to Allied World. Millennium contends

**ORDER**

the documents on the hard drive belong to Millennium and may contain privileged and/or confidential information. Allied World opposes Millennium's request.

### 3. Information Regarding the Content of Uehling's Communications with Representatives of Ameritox

<u>Allied World's question</u>: "And, Counsel, if I ask [the witness] anything regarding the content of [communications at a meeting at which Uehling and representatives of Ameritox, Ltd. were present] you will instruct the witness not to answer; is that correct?"

<u>Uehling's response/objection</u>: "Yes;" Attorney-client privilege and common interest privilege. (*Id.* at 65:11-19.)

## C. The Related *In Re Ryan Uehling* Proceeding

Ryan Uehling was also the subject of a deposition in another discovery proceeding currently before the Court, *In Re Ryan Uehling,* No. 13-mc-00022-LJO-BAM ("*Uehling I")*. *Uehling I* relates to discovery being conducted in litigation pending in the United States District Court for the District of Arizona, *Nelson v. Millennium Laboratories, Inc.*, No. 2:12-cv-01301-SLG (D. Ariz. filed June 18, 2012). In the *Nelson* action, Plaintiff Kelly Nelson ("Nelson"), a former Millennium employee, asserts various employment-related claims, and also alleges Millennium retaliated against her for complaining about Millennium's improper business practices. Ryan Uehling is not a party to the Arizona case; however, Uehling supervised Nelson prior to his termination from Millennium, and Nelson identified Uehling as a witness in support of her claims against Millennium. Millennium sought to depose Uehling, among other reasons, in order to uncover any potential bias.

Millennium deposed Uehling on April 2, 2013. Uehling refused to answer 135 of Millennium's questions on grounds of relevance and various privileges, including an undefined statutory privilege that Millennium suspected was related to the seal provisions of the False Claims Act. Uehling would not disclose the nature of his statutory privilege, and argued that merely discussing the privilege would violate the privilege.

The Court granted Millennium's motion to compel and ordered Uehling to participate in a sealed deposition. The Court concluded that, even if Uehling was a relator in a *qui tam* action, many of Millennium's questions were unrelated to the nature or existence of any *qui tam* action.[1] Moreover, the Court was also persuaded by Millennium's argument that, as a key percipient witness in the underlying employment discrimination action, Uehling's bias (which would include any lawsuit he was litigating against Millennium) was relevant.  The Court concluded Millennium had a legitimate need for the discovery that would have to be balanced against any potential *qui tam* privilege, assuming one existed.  In balancing Millennium's need for the information with Uehling's privilege, assuming one existed, the Court ordered an additional deposition to be taken under seal.[2]

Subsequently, Allied World filed a Motion to Intervene in *Uehling I*.  Allied World sought to obtain the sealed transcript of Uehling's subsequent deposition testimony in order to remedy an "informational imbalance" between Millennium and Allied World in the Coverage Action. Uehling initially opposed; however, in an effort to narrow the issues for Allied World's motion to compel, stipulated to Allied World's intervention for the purpose of obtaining the sealed transcript.

### III.   DISCUSSION

**A.   Legal Standard**

The scope of discovery under Rule 26(b) is broad, but not unlimited.  Rule 26(b) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). "Relevant information need not be admissible at

---

[1] Notably, at the time of Uehling's deposition, Millennium had already received a subpoena from the DOJ.  Thus, Millennium already knew it was under investigation, to at least some degree.

[2] In making this ruling, the Court noted that the seal provisions of the False Claims Act are not violated under the plain language of the statute or Ninth Circuit authority unless a disclosure is made publically.  Considering the information sought did not seek to explore the nature or substance of any *qui tam* action, coupled with the directive that any further deposition be taken under seal, a balance between protecting the seal provisions of the False Claims Act, assuming they applied, and Millennium's discovery needs, was achieved.

the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

However, under Rule 26, a court must limit the frequency or extent of discovery if it determines any of the following: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C)(iii).

Federal Rules of Civil Procedure 26 and 45 govern discovery from nonparties by subpoena. *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir.1994) (applying both rules to motion to quash subpoena). A court has broad discretion in supervising discovery and striking a balance between disclosure and non-disclosure. *Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388, 389 (N.D.Cal. 1976). Under Rule 26, a court may order a protective order to "any person" who is able to establish good cause for issuance of the protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. Pro. 26(c).  Similarly, "Rule 45 imposes a mandatory responsibility on this court to protect nonparties from unduly burdensome discovery." *In re NCAA Student-Athlete Name & Likeness Licensing Lit.,* 2012 WL 48446522 (N.D. Cal. 2012). Additionally, "the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *In re NCAA Student-Athlete Name & Likeness Licensing Lit.,* 2012 WL 48446522 (N.D. Cal. 2012). The Ninth Circuit has explained that "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party...."  *United States v. C.B.S.,* 666 F.2d 364, 371–72 (9th Cir. 1982) (footnotes omitted), *cert. denied* 457 U.S. 1118 (1982).

Case 1:14-mc-00009-LJO-BAM   Document 34   Filed 04/17/14   Page 7 of 13

**B.     Question Concerning Uehling's Involvement in Actions Against Millennium[3]**

Allied World seeks to question Uehling about his involvement in actions against Millennium. Allied World argues this information is relevant because the "most significant" issues in the Coverage Action are the scope, nature, and basis of the DOJ investigation for which Millennium seeks coverage. Millennium and Allied World believe the DOJ investigation is based on a *qui tam* complaint Uehling filed, thus, and the information is relevant to a key issue in the Coverage Action. Uehling objects to this line of questioning because the answer to this question was already provided during the Millennium deposition, and Allied World has access to that sealed transcript. Thus, Uehling argues that compelling this identical information is unnecessary.[4]

The Court denies Allied World's motion to compel. Uehling is not a party to the Coverage Action, and the Court is mindful of its obligation to protect Uehling, a non-party, from overly burdensome and unnecessary discovery. *Rankine v. Roller Bearing Co. of America, Inc.*, 2013 WL 3992963 (S.D. Cal. 2013) ("Where discovery is requested from non-parties, more stringent restrictions should be enforced.") Both this Court and Uehling acquiesced to Allied World's request to intervene in *Uehling I* to avoid this precise issue: a request to compel further deposition testimony when the same testimony was already provided to Millennium. Allied World concedes this exact question was answered in Millennium's sealed deposition. Simply put, there is no reason Uehling should be subjected to another deposition when the substance of the inquiry is identical to information Allied World already possesses.[5] Accordingly, the

---

[3] <u>Allied World's question</u>: "Are you currently involved or have you in the past been involved in any action filed against Millennium?"
<u>Uehling's response/objection</u>: Attorney client/privilege and "statutory privilege."
(January 20, 2013 Uehling Dep. 59:20-22; 60:25-61:4 (attached as Wiygul Decl., Ex. 1.)

[4] Uehling also objects to the question based on his "statutory privilege." Uehling argues that Allied World seeks information beyond the mere existence of a *qui tam* complaint, assuming one exists, and instead seeks to discover the substance and nature of the *qui tam* allegations. Uehling argues that providing such information to Allied World, and by extension, Millennium, would substantially burden the government's investigation into Millennium.

[5] Allied World represents it would like to ask follow-up questions concerning the nature and substance of any potential *qui tam* action against Millennium in which Uehling may be a relator. Without deciding whether such

**ORDER**

"discovery sought is unreasonably cumulative [and] duplicative, [and] can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii).

## C. Document Production – Allied World's Request for the Hard Drive Uehling Produced to the DOJ[6]

Allied World seeks a copy of the hard drive Uehling provided to the DOJ. Uehling provided the DOJ an external hard drive containing 9.47 gigabytes of information, which translates to roughly 95,000 standard size (100kb) documents. Uehling objects, arguing that the information is privileged and producing the information is unduly burdensome. Allied argues the burden is minimal because all Uehling needs to do is copy the external hard drive he provided to the DOJ. Allied World also argues that Uehling does not need to review the documents for privilege, because by providing those documents to the DOJ, any such privilege, if it ever existed, was waived.

Allied World's motion to compel this document production is denied. Allied World's discovery request is overbroad and unduly burdensome. Rule 26(b)(2)(iii) expressly limits discovery where the burden or expense of the proposed discovery outweighs its likely benefit. *See, Green v. Baca,* 219 F.R.D. 485 (C.D. Cal. 2003) ("courts must weigh the burden or expense of proposed discovery against its likely benefit"). In determining whether a request is overbroad,

---

follow-up questions would be proper in light of Uehling's asserted privilege, no such questions are before the Court. The only question before the Court is one which Uehling has already answered in a sealed deposition, the transcript of which Allied World possesses. Moreover, as a practical matter, questions concerning a potential *qui tam* action do not illuminate the nature and scope of the DOJ's investigation. Rather, the nature and scope of the DOJ's investigation can be identified by requesting Millennium disclose the information requested in the DOJ's subpoenas. Thus, as a separate reason to deny Allied World's motion to compel, this Court finds the information is more readily accessible from Millennium, and that requesting a third party produce this information is overly burdensome. Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii). (Discovery can be limited where the "discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive.")

[6] Allied World's document subpoena requests "all documents that [Uehling or any agent or representative of Uehling] provided to the DOJ . . . related to any . . . investigation or potential investigation" of Millennium and "all communications and/or correspondence between the DOJ . . . and [Uehling or any agent or representative of Uehling] related to any such investigation or potential investigation."

**ORDER**

the court must "ensure that the quest for discovery does not subsume other important interests." *Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.,* 71 F.R.D. 388, 390 (N.D. Cal. 1976). Thus, "in determining whether a request is overbroad, the court must weigh the costs of compelling discovery against the movant's asserted interest in the information sought." *Meeks v. Parsons,* 2009 WL 3003718 (E.D. Cal. 2009). Similarly, "[i]n determining whether a request for discovery will be unduly burdensome to the responding party, the court weighs the benefit and burden of the discovery.... This balance requires a court to consider the needs of the case, the amount in controversy, the importance of the issues at stake, the potential for finding relevant material and the importance of the proposed discovery in resolving the issues." *Playboy Enterprises, Inc. v. Welles,* 60 F. Supp.2d 1050, 1053-54 (S.D. Cal. 1999).

In the Coverage Action, Millennium seeks payment for costs it incurred in responding to an investigation by the DOJ. To defend against the Coverage Action, Allied World seeks information regarding the nature and scope of the DOJ investigation. Allied World also contends it seeks information concerning the "scope and nature of certain *qui tam* and private actions pre-dating the inception of the Policy . . . that Allied World contends are closely related to the DOJ investigation." Doc. 29: 21-24.

Uehling's burden in producing this information, particularly as a non-party, is substantial. Uehling asserts, and Allied World does not dispute, that the hard drive contains 9.47 gigabytes of information, which translates to roughly 95,000 standard size (100kb) documents. Allied World does not dispute that if the documents were to be reviewed, the production process would take weeks, if not months, and cost Uehling hundreds of thousands of dollars.

The Court disagrees with Allied World's argument that the documents would not need to be reviewed, and that any claim of privilege has been waived by producing these documents to the DOJ. Assuming Uehling is a relator in a *qui tam* action, this document disclosure is required by the False Claims Act. *See,* 31 U.S.C. § 3730(b)(2) ("A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government. . . .")

**ORDER**

Further, such production is not a waiver of the privilege. In a *qui tam* action, the relator and the government are not adverse, but possess similar interests, and Courts universally agree that the work product and attorney client privileges are not waived when a relator produces documents to the DOJ.  *See United States ex rel. [Redacted] v. [Redacted],* 209 F.R.D. 475, 479 & n. 3 (D. Utah 2001) (holding that the substance of discussions between the government and the relators incident to the government's investigation into the relator's claims were protected work product because "[a]t this point in the litigation," the government and relators "share a community of interest," even though their interests subsequently might diverge); *United States ex rel. Purcell v. MWI Corp.,* 209 F.R.D. 21, 26–27 (D.D.C. 2002) (noting that the "weight of the limited authority favors the government's position that a joint-prosecutorial privilege exists" between the government and the relator in qui tam cases, and holding that in cases in which the government has intervened, such a "privilege" exists and extends to disclosures of work product by the relator and his counsel); *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685–686 (S.D. Cal. 1996) (holding that the relator and the government "are essentially the same party" and can assert a "joint prosecution privilege" to avoid a waiver of work product immunity).

Aside from the need to review the documents for his own privileges, Uehling would also be required to review these documents for potential redaction and withholding based on confidentiality, privacy, and proprietary information purposes. Millennium argues Uehling stole these documents, which may include confidential information.  If Uehling were to provide these documents to any private entity requesting them, Uehling could potentially be subjected to civil or even criminal liability.  Thus, the Court accepts Uehling's position that the documents contained on the external hard drive would need to be reviewed.

The benefit of these documents to Allied World is minimal. The scope and nature of the DOJ's investigation into Millennium is not defined by the 95,000 documents Uehling provided to the DOJ.  Similarly, Allied World assumes, without support, that each of the 95,000 documents specifically relates to the potential *qui tam* action. Both the potential *qui tam* action,

as well as the DOJ's investigation, may have relied upon some, all, or none of the documents Uehling provided to the DOJ. Even if this Court compelled production of these documents, Allied World would have no way of knowing which documents concern the nature and scope of the DOJ's investigation or the potential *qui tam* action.  Balancing the benefit to be obtained from this document production with the burden of production from a non-party, the Court finds the burden of producing the documents outweighs any likely benefit.

Moreover, and as a separate reason for denying this document request, this Court finds that Allied World has an alternative source for this information. The information Allied World seeks is more readily accessible from Millennium than Uehling. *See, Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388, 389 (N.D.Cal., 1976) (whether the deponent is a party and whether the information sought is available from other sources are two considerations that factor into a court's balance inquiry);  *Soto v. Castlerock*, 282 FRD 492, 505 (E.D. Cal. 2012) ("In general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests"); *Insituform Technologies v. Cat Contracting*, 914 F. Supp. 286, 287 (N.D.Ill.1996) (holding a party should not be permitted to seek information from a non-party that they can obtain from the opposing party); Fed. R. Civ. P. 26(b)(2)(C) (a court may limit discovery if "the discovery sought ... is obtainable from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit.")

Rather than forcing Uehling, a non-party, to incur substantial expense as part of Allied World's overbroad and speculative document requests, Allied World can seek information concerning the nature and scope of the DOJ's investigation by inquiring with Millennium. Millennium is a party to the Coverage Action and has first-hand knowledge about the nature and scope of documents and information the DOJ has requested from Millennium.  Thus, the information Allied World seeks "is more convenient, [and] less burdensome," if sought from Millennium.

**ORDER**

C.     **Allied World's Request For Information Concerning Uehling's Communications With Ameritox[7]**

Allied World seeks information concerning the substance of the communications between Uehling and representatives for Ameritox.[8] The parties dispute whether a common interest privilege applies to these communications.

The Court need not discuss the application of the common interest privilege to Uehling's communications with Ameritox representatives because those communications are irrelevant to the issues involved in the Coverage Action. Indeed, in the parties' joint statement, Allied World makes no argument concerning its need for, or the relevance of, this information. During oral argument, the Court questioned Allied World's counsel on the relevance of this information. Allied World's response, essentially, was that Uehling and Ameritox representatives *may* have discussed a potential *qui tam* action against Millennium. However, even if such a discussion took place, the discussion has no relevance towards the DOJ's investigation into Millennium. Even if the Court compelled Uehling to disclose the nature and substance of his discussions with representatives of Ameritox, Allied World could only speculate as to whether those discussions have anything to do with the DOJ's investigation into Millennium. Allied World's motion to compel further deposition testimony on this issue is denied.

At oral argument, counsel stated Allied World required this information to evaluate policy exclusions of "related claims." If prior actions were filed on the same claims, policy exclusions would deny coverage. However, the source of any filed claims is not through Uehling's discussions with Ameritox. Rather, Allied World can identify prior actions involving Millennium by directing those inquiries to Millennium. Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii).

---

[7] Allied World's question: "And, Counsel, if I ask [the witness] anything regarding the content of [communications at a meeting at which Uehling and representatives of Ameritox, Ltd. were present] you will instruct the witness not to answer; is that correct?"
Uehling's response/objection: "Yes;" Attorney-client privilege and common interest privilege.

[8] Ameritox is one of Millennium's competitors.

**ORDER**

(Discovery can be limited where the "discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive.")

### IV. CONCLUSION

Based on the foregoing, Allied World's Motion to Compel (Doc. 13) is DENIED in its entirety.

IT IS SO ORDERED.

Dated: **April 17, 2014**          /s/ Barbara A. McAuliffe
                                    UNITED STATES MAGISTRATE JUDGE